IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



GREGORY A. VANSTONE                )
                                   )
    Plaintiff,                     )
                                   )
vs.                                )   Case No. CV 96-S-1476-M
                                   )
ALABAMA DEPARTMENT OF              )
CORRECTIONS; QUEST CARE;           )
CORRECTIONAL MEDICAL               )
SERVICES; DR. LYRENE;              )
DR. HAMMET; and NURSE WILEY,       )
                                   )
    Defendants.                    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a *pro se* action pursuant to 42 U.S.C. § 1983 in which the plaintiff, Gregory A. Vanstone, alleges that he was denied adequate medical treatment for an inguinal hernia while imprisoned at the St. Clair Correctional Facility. The plaintiff filed his *pro se* complaint on June 7, 1996, naming as defendants the Alabama Department of Corrections, QuestCare, Inc., Correctional Medical Services, Inc., Correctional Healthcare, Dr. Lyrene, Dr. Hammack,[1] and Nurse Wiley. He seeks injunctive relief to compel the surgical correction of his hernia and money damages. In

---

    Although the plaintiff identified this defendant as "Dr. Hammet," his correct name is Dr. Richard Hammack.

accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary review and recommendation. See McCarthy v. Bronson, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

On August 13, 1996, the court entered an order for special report directing that copies of the complaint in this action be forwarded to each of the defendants and requesting that they file a special report responding to the factual allegations of the complaint. On August 28, 1996, the Alabama Department of Corrections (DOC) filed its motion to dismiss the complaint against it on the basis of its Eleventh Amendment immunity. Defendants Correctional Medical Services, Inc. (CMS), Dr. Lyrene, Dr. Hammack, and Nurse Wiley filed a special report on September 19, 1996, attaching the affidavit of Dr. Hammack and portions of plaintiff's prison medical record. The plaintiff filed a response on October 3, 1996. By order of November 21, 1996, the parties were notified that the special report filed by the defendants would be construed as motions for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. On March 28, 1997, the DOC's motion to dismiss was granted, and it was dismissed as a defendant. Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed. 2d 1114 (1978).

2

## Summary Judgment Standards

Because the court is treating the special report from the defendants as a motion for summary judgment, the court must determine whether there are any genuine issues of material fact and whether the moving defendants are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Fed.R.Civ.P.* 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett, supra; Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Barfield v. Brierton,* 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who

carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett, supra; Bennett v. Parker,* 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker,* 898 F.2d at 1532. "Specific facts" pled in a sworn complaint also are considered in opposition to summary judgment. *Perry v. Thompson,* 786 F.2d 1093 (11th Cir. 1986).

### Facts

Plaintiff reported pain relating to a right inguinal hernia and was initially seen by Dr. Lyrene on December 19, 1993,

4

who found that the hernia had been present for about a year and that it reduced very easily. He recommended that the plaintiff be monitored and given a bottom-bunk profile to reduce the amount of climbing required.

The plaintiff's prison medical records show that he was examined thereafter by several staff physicians relating to the hernia, including Dr. Cooksey, Dr. Tingley, Dr. Lyrene, and Dr. Hammack. Dr. Cooksey examined the plaintiff on January 11, 1995, and found that he was unfit for a work assignment, putting him in Class III medical status due to a golf-ball size hernia and instructed plaintiff to avoid lifting. Dr. Cooksey again saw plaintiff two days later, on January 13, 1995, observing that the hernia was easily reducible and did not require surgical treatment. Plaintiff was instructed not to lift anything weighing more than 25 pounds, re-classifying him as Class II for light-duty work assignments. Dr. Lyrene examined plaintiff again on February 10, 1995, finding, like Dr. Cooksey, that the hernia essentially self-reduced and that surgical repair would be "elective." Plaintiff was seen again by Dr. Cooksey on June 7, 1995, who concluded, based in part on Dr. Lyrene's previous examinations, that the hernia should simply be monitored for the time-being. Once again Dr. Lyrene examined plaintiff on July 26, 1995, and he noted that the

hernia was "moderate" in size and very easily reducible. He recommended continued monitoring.

Dr. Hammack examined plaintiff for the first time on September 27, 1995, after he replaced Dr. Cooksey as the staff physician at the St. Clair Correctional Facility. He wrote of the plaintiff, "Large [right] Inguinal Hernia into Scrotum -- Reduced moderately easily but from size will probably recur each time he stands or strains." He noted that the reduction of the hernia was a "little slow." He issued a five-day work stop-up for plaintiff and wanted Dr. Lyrene to re-evaluate him.

After an appointment was missed on October 9, 1995, plaintiff saw Dr. Lyrene again on December 19, 1995. At that time Dr. Lyrene suggested that plaintiff could obtain surgical correction of the hernia if he or his family paid all or part of the cost. In the meantime, plaintiff was fitted for a truss or scrotal support to help control the bulging of the hernia. When plaintiff met again with Dr. Lyrene on February 22, 1996, he again found the hernia easily reducible. Plaintiff, however, expressed the desire for surgery to be paid for by his family. Dr. Lyrene stated he would be in touch with a surgeon in Huntsville. The records to not indicated anything else being done.

Dr. Hammack saw the plaintiff again on September 10, 1996, and found that the hernia almost reduced spontaneously upon

6

lying down and was easily reducible with a small amount of pressure. He repeated his opinion that surgery to repair the hernia was "elective" because it did not interfere with plaintiff's daily activities. Although he believed a truss would help plaintiff, he noted that he was not wearing the one issued to him in February.

Plaintiff has described his hernia as follows:

> When I first went to the unit hospital in November of 1994 with some light intense pain and a knot the size of a large peanut, I haven't has [sic] any treatment and I now have near constant pain and must lay down even after twenty (20) minutes of modest walking. The protrusion now is the size of an average orange in my testicle sac and extands upward from the testicles to approximately one (1) inch below my naval [sic] line, on my right side, halfway between my naval [sic] and hip. Usually, this "mass" is about two (2) inches thick, three (3) inches across, and five (5) inches long.

He also asserts that the hernia does interfere with his daily activities, saying, "I am totally unable to participate in any activities. Even card games, and scrabble are extremely difficult to play, because even at the best of times I can hardly sit up right."

CMS is a private corporation that contracts with the DOC to provide medical services to Alabama inmates. The doctors and

nurses at St. Clair are employees of CMS, not the DOC. Dr. Lyrene serves as the state-wide Medical Director for CMS, and he has responsibility for approving extraordinary or "free-world" medical treatment for inmates.

### QuestCare and Correctional Healthcare

Two of the defendants named in this action are QuestCare and Correctional Healthcare, although plaintiff sets out no factual allegations against either of them. The court judicially knows that QuestCare ceased providing medical services to inmates in the fall of 1994, and that no entity named Correctional Healthcare has provided such services for years before that. It would appear that neither of these entities were involved in plaintiff's treatment, and certainly were not involved in the latter stages as his hernia has worsened. Because plaintiff has not alleged any factual basis for liability on the part of these two entities, the complaint against them is due to be dismissed. *Fullman v. Graddick,* 739 F.2d 553 (11th Cir. 1984).

### Inadequate Medical Care

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure

8

to provide adequate medical treatment amounted to cruel and unusual punishment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976); *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective; the second inquiry is subjective. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"*Hill*, 40 F.3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N.H. 1977)). "[T]he medical need of the prisoner need not be life threatening" to be considered "serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir.

9

1988). A medical condition that causes needless pain and for which treatment is available also is a "serious" condition.

The second part of the inquiry -- whether the response of the defendants amounted to deliberate indifference -- is itself a two-part determination. A defendant may be held liable for an Eighth Amendment violation only if he had "knowledge of the [plaintiff's] particular medical condition," *Hill,* 40 F.3d at 1191 (emphasis omitted), and he acted intentionally or recklessly to deny or to delay "access to medical care" or to interfere "with the treatment once prescribed," *Estelle v. Gamble,* 429 U.S. at 104-05. *See also Mandel v. Doe,* 888 F.2d at 788; *see generally Farmer v. Brennan,* ___ U.S. at ___, ___, 114 S. Ct. 1970, 1977-81 (1994). "Mere negligence or medical malpractice" on the part of the defendants is not sufficient to support an Eighth Amendment claim. *Mandel v. Doe,* 888 F.2d at 787-88; *see also Barfield v. Brierton,* 883 F.2d 923, 939 (11th Cir. 1989). Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle,* 429 U.S. at 106. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991). "Medical

10

treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986)).

### Dr. Hammack and Nurse Wiley

The gravamen of the plaintiff's claim is that the defendants have failed or refused to provide him with surgery to correct the hernia. The undisputed evidence makes clear that it is Dr. Lyrene who must approve such surgery, and that neither Dr. Hammack nor Nurse Wiley, absent an emergency, grant the approval without Dr. Lyrene's concurrence. They simply lack the authority to do so.

To state a claim for relief under 42 U.S.C. § 1983, the plaintiff must allege that he has been deprived of a federally-protected right by someone acting under color of state law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed. 2d 185 (1978). Implicit in these elements is the notion that the act or omission of the defendant be the proximate cause for the deprivation suffered by the plaintiff. *Novak v. Cobb County Kennestone Hospital Authority,* 74 F.3d 1173 (11th Cir. 1996). It is meaningless to speak of someone depriving another of a federal

11

right when it is not the act or omission of the defendant that caused the deprivation. Thus, causation is an element of the constitutional torts covered by § 1983 just as it is in other run-of-the-mill torts.

In this case, the undisputed facts make plain that neither Dr. Hammack nor Nurse Wiley "caused" any alleged violation of the plaintiff's Eighth Amendment rights by refusing him surgery for the hernia. Since they could not authorize the surgery, they had no control of whether plaintiff could receive that type of treatment or not. The only treatment options left to them, without Dr. Lyrene's concurrence, was ordering bed-rest, lifting restrictions, and other conservative remedies, which they did.[2] Because they supplied plaintiff with all of the treatment they could, the denial of a surgical option is not attributable to them, and they are not liable for it. Thus, Dr. Hammack and Nurse Wiley are entitled to summary judgment on the claim against them.

---

2 The court is aware, of course, that Dr. Hammack did not believe plaintiff needed surgery. Nevertheless, even if he had believed that surgery was necessary, he could not have ordered it without Dr. Lyrene's approval. Thus, Dr. Hammack did not "cause" the denial of surgery.

MAY-14-1997 10:23 USDC HUNTSVILLE 205 551 0741 P.012/018

### CMS and Dr. Lyrene

At the outset, the court believes there is sufficient evidence before the court to create a triable issue as to whether the refusal to approve corrective surgery for plaintiff's hernia subjected him to cruel and unusual punishment in violation of the Eighth Amendment.[3] Despite the assertion that plaintiff's hernia was not so serious as to mandate surgery, that surgery was merely elective, there is evidence in the medical records and plaintiff's sworn complaint to justify the conclusion by a fact-finder that plaintiff suffered from a debilitating, constantly painful hernia that recurred each time he stood or strained. Dr. Hammack described it as a "large" hernia, and plaintiff said in 1996 it was the size of an orange. Certainly a treatable medical condition that prevents plaintiff from walking or even standing without great pain is a "serious" medical condition that cannot be blithely ignored under the label that treatment is "elective." A condition

---

[3] The claim against CMS is not grounded simply on *respondeat superior* which, of course, is not a sufficient basis for § 1983 liability. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). Rather, as Medical Director for CMS, Dr. Lyrene was its decisionmaker in this area, setting for it policy with regard to who would be approved for "free-world" medical treatment. As its final decisionmaker, Dr. Lyrene's decision was, in effect, CMS's decision, for which it is liable. *See City of St. Louis v. Prapotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988); *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed. 2d 452 (1986).

13

that causes needless pain without penological justification meets the objective standard of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976).

Nevertheless, having said that there are genuine disputes of fact sufficient to warrant further proceedings on the merits of the claim, it is also clear that Dr. Lyrene is entitled to partial summary judgment on plaintiff's damages claim on the basis of qualified immunity. Public officials acting within their discretionary authority are entitled to qualified immunity from damages if the law was not clearly established that their actions violated a federally-protected right of the plaintiff. *Lassiter v. Alabama A & M University Board of Trustees,* 28 F.3d 1146 (11th Cir. 1994) (en banc). To be clearly established, the law must have been pronounced in a similar case decided by the United States Supreme Court, Eleventh Circuit Court of Appeals, or the Alabama Supreme Court so that a reasonable person in the defendant's place would recognize the illegality of the conduct under the circumstances. Although employed by a private corporation, qualified immunity has been extended to physicians like Dr. Lyrene who provide medical services to prison inmates. *See Howell v. Evans,* 922 F.2d 712 (11th Cir. 1991), <u>vacated</u> 731 F.2d 711 (11th Cir. 1991) *reinstated sub nom Howell v. Burden,* 12 F.3d 190, n.* (11th Cir. 1994); *Adams v. Poag,* 61 F.3d 1537 (11th Cir. 1995).

14

The plaintiff has not directed the court's attention to any case, nor has the court found one, in which it was determined that refusal to approve surgery for an orange-size, non-incarcerated inguinal hernia that easily reduces violated the Eighth Amendment prohibition against cruel and unusual punishment. While there are cases dealing with the need for medical treatment, none have addressed the reasonableness of the medical judgment that such a hernia did not warrant surgical correction. Certainly, such a medical judgment is entitled to some deference, particularly in the absence of a factually-similar case decision finding such a judgment professionally unreasonable. As the Seventh Circuit has observed, "Surgery is not an automatic, immediate response to a hernia. Just as an uncorrected hernia has its pain and risks, so does surgery." *Evans v. Valles*, 986 F.2d 1424 (7th Cir. 1993). Therefore, in the absence of a case clearly establishing the proposition that refusal to approve "elective" surgery for a large but non-incarcerated hernia violates the cruel and unusual punishments clause, Dr. Lyrene is entitled to qualified immunity from damages. He should be granted partial summary judgment on this claim.

Of course, it is clear that qualified immunity does not preclude plaintiff from seeking the injunctive relief he pursues. Likewise, the court finds that CMS, as a corporate entity and not

15

an individual governmental actor, is not entitled to claim the shield of qualified immunity. In *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed. 2d 673 (1980), the Supreme Court rejected the contention that a municipal corporation could claim qualified immunity. While there are profound differences between a municipal corporation on the one hand and a private medical-provider corporation on the other, it seems clear that qualified immunity is reserved for natural persons acting as governmental actors. *See Blumel v. Mylander,* 954 F.Supp. 1547 (M.D. Fla. 1997). Thus, CMS is not entitled to partial summary judgment on qualified immunity grounds.

In summary, the court concludes that further proceedings are required on plaintiff's claim for injunctive relief to compel Dr. Lyrene and CMS to approve and provide surgical correction of his hernia. Also, plaintiff's claim for damages survives insofar as CMS is concerned, even though Dr. Lyrene is shielded by qualified immunity. Whether plaintiff can prevail on these claims, of course, must await further proceedings.

### Recommendation

Accordingly, for the reasons stated above, the magistrate judge hereby RECOMMENDS that the special report be treated as a motion for summary judgment and, as such, GRANTED as to Dr. Hammack

16

and Nurse Wiley, and that all claims against them in this action be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that the motion for summary judgment in behalf of Dr. Lyrene be GRANTED IN PART, and the claim for damages against him be DISMISSED WITH PREJUDICE. The motion should be DENIED with respect to the claim for injunctive relief. The motion for summary judgment filed by CMS should be DENIED.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

The Clerk is DIRECTED to send a copy of this report and recommendation to the plaintiff and to counsel for the defendants.

17

DATED this 12th day of May, 1997.

*[signature]*
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

18